# NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-151

PATRICK LACOUR

VERSUS

**CITY OF ALEXANDRIA, ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260,217
HONORABLE MONIQUE RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Patrick Lacour**
**In Proper Person**
**4806 Wendover Blvd.**
**Alexandria, LA 71303**
**(318) 442-6192**
**COUNSEL FOR PLAINTIFF/APPELLANT:**

**Claude F. Reynaud, Jr.**
**Carroll Devillier, Jr.**
**Kelsey A. Clark**
**Breazeale, Sachse & Wilson, LLP**
**One American Place, Suite 2300**
**P.O. Box 3197**
**Baton Rouge, LA 70821**
**(225) 387-4000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **City of Alexandria, et al.**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

This appeal arises from a Public Records Request (the Request) made by Patrick Lacour to the City of Alexandria. The Request concerned long-standing federal litigation between the City of Alexandria and CLECO Corporation (CLECO). The facts established the City had a contract with CLECO styled "Agreement for Wholesale Electric Energy Service." This Agreement, which was for a five-year term, was executed in February of 2010, with an effective date of June 1, 2010.

Pertinent to this case, the Agreement provided the City was permitted, on an annual basis, to choose from one of two pricing options: (1) the Facilities Charge Cost Model (referred to as Option A), or (2) the Heat Rate Cost Model (referred to as Option B). Pursuant to this, the City would inform CLECO of its choice annually. However, if the option selected did not change from one year to the next, no formal election was sent by the City to CLECO.

On July 10, 2017, Lacour sent the aforementioned Request to the City seeking "access to review all documents related to the analysis and communication to CLECO of the annual election of either Option A or Option B." The City informed Lacour on July 14, 2017, they were working on the Request, and when the documents were gathered they would be provided to him. On that same day, Lacour contacted the City and requested "all documents related to the analysis of the annual election." Michael Marcotte, the Utility Director for the City, replied to Lacour on July 18, 2017, informing him certain specific records would not be produced because they were "Confidential Business Information" that was exempt from production under the Louisiana Public Records Act. La.R.S. 44:1-41.

On July 26, 2017, the City provided what it considered to be the non-exempt responsive documents to Lacour. Those documents comprised two letters, dated

August 16, 2010, and August 1, 2011, from the City to CLECO which set forth the City's annual election of the pricing model. The City maintained these two letters were the only documents that were responsive to Lacour's Request and were not exempt from production under the Louisiana Public Records Act.

Subsequently, Lacour filed a Petition for Writ of Mandamus, seeking to require the City to produce any additional documents that were responsive to his Request, including any confidential information. The City maintained it could not produce any other requested documents because they contained proprietary pricing information, which the City was required to keep confidential under the Agreement, and because the Louisiana Public Records Act specifically exempts such information from disclosure. See La.R.S. 44:3.2.

According to the City, when it first received Lacour's Request, it contacted CLECO to inquire whether CLECO would object to the disclosure of the pricing information. CLECO indicated it wished to maintain the confidentiality of the documents related to pricing, thus prohibiting the City from providing it to Lacour.

Lacour's petition was set to be heard on December 4, 2017. Prior to that date, the City again contacted CLECO to request a waiver of the confidentiality provisions in the Agreement in order to provide Lacour the documents in question. On November 29, 2017, CLECO agreed to allow disclosure of the confidential pricing information. The following day, the City provided that document to Lacour. The City maintained with the production of that document, there remained no other responsive documents to Lacour's Request.

On the morning of the December 4, 2017 hearing, prior to beginning the hearing the trial court held a status conference in chambers. The City informed the trial court it believed all responsive documents requested by Lacour had been provided. Lacour, who was representing himself, disputed this and insisted on moving forward with the hearing.

3

At the hearing, Michael Marcotte, the City's Utilities Director, and Charles Johnson, the City Attorney, testified and were questioned by Lacour. Marcotte and Johnson both maintained there was no additional documentation responsive to Lacour's Request. The trial court agreed and denied Lacour's petition, finding it was moot, as well as his request for penalties and attorney fees. The trial court did award Lacour court costs in the matter. This appeal followed.

## ANALYSIS

In his first assignment of error, Lacour contends the City's response to his Request is still incomplete. Specifically, he argues the City produced no documents regarding what the parties referred to as the "Inoperable Option." This term referred to the fact that for the years 2013, 2014 and 2015, one of the two options was unavailable to the City due to the inoperability of a CLECO plant. Marcotte discussed this at the hearing:

> Q. Are there any communications or analyses for 2013, 2014 and 2015?
>
> A. There are no formal analyses. We elected not to move because of the, uh – you had two options, Your Honor. One was a Heat Rate Cost Model; one was a Facilities Cost Model. The Facilities Cost Model was basically priced against one unit that CLECO had, their Third Unit in Boyce, Madison Three. That unit was having operational difficulties.
> So, basically, at that point, the comparison was an Operable Option to an Inoperable Option. So we went with the Operable Option. There wasn't a financial analysis at that point. It was a – it was almost a yes/no question.

Reviewing the record, there is nothing to indicate the trial court erred in concluding there were no responsive documents the City failed to produce. Lacour's brief contends it should not have taken this long for him to have obtained the information as to the inoperable status of the CLECO plant. This complaint is more appropriately a question as to whether the City acted unreasonably in its disclosure of this information to Lacour, so as to be cast with penalties and attorney fees.

The City is obligated under the Louisiana Public Records Act to produce all "records" in existence that are responsive to a citizen's request. La.R.S. 44:32. As the City notes, it is under no obligation to create documents or records in an attempt to respond to a public records' request. *Williams Law Firm v. Board of Supervisors of Louisiana State University*, 03-79 (La.App. 1 Cir. 4/2/04), 878 So.2d 557. We have found nothing in the record to establish the trial court erred in finding the City complied with the requirements of the Louisiana Public Records Act.

Next, Lacour argues the City was arbitrary and capricious in failing to timely provide documents containing CLECO's proprietary pricing information. As the City notes, Lacour first argues the information was withheld by the City because it contained proprietary information, but then argues the City withheld production because it was the "work product" of Marcotte.

The record is void of any support for the argument the City withheld the information at issue because it was the work product of its employee, Marcotte. The City, at all times, asserted the information at issue could not be produced due to the confidentiality provision set forth in the Agreement with CLECO and the fact the Louisiana Public Records Act does not "require the disclosure of proprietary or trade secret information." La.R.S. 44:3.2. The testimony was uncontroverted that the City, after receiving Lacour's request, contacted CLECO that same month to inquire if CLECO would waive its confidentiality protection under the Act and allow the City to release the information to Lacour. Because CLECO initially refused to allow the disclosure, the City could not release the document to Lacour. When CLECO finally agreed to waive its confidentiality

5

rights on November 29, 2017, after the City again requested it do so, the document in question was released to Lacour the next day.[1]

Lacour also argues the City could have produced the document at issue by simply redacting the proprietary pricing information of CLECO. However, it was established the document at issue was a spreadsheet that contained heat rates and other information from which CLECO's confidential pricing could easily have been derived. Moreover, it was stated to protect the confidentiality of CLECO's confidential information, everything but the five-word title of the spreadsheet would have needed to be redacted. Obviously, this would have accomplished nothing.

Lacour argues in brief the trial judge took issue with the City's failure to provide him the fully redacted document. This is simply not correct. Lacour in brief noted the trial court did state at the hearing that the City "could have provided you something and redacted all of the information out of it." However, Lacour fails to provide the entirety of the trial court's comments on the matter, wherein it noted the futility of such a production. The trial court stated, "[the City] could have redacted everything, except those five words at the top, **which does nothing**." (Emphasis added.) Thus, we find the City was reasonable in its decision not to release the fully redacted spreadsheet which, as the trial court specifically found, would have accomplished "nothing."

Lacour also claims he is entitled to civil penalties because the City failed to meet the certification requirements of La.R.S. 44:34. That statute, in pertinent part, provides:

---

[1] Lacour, in his brief, states that CLECO "had no problem with sharing the information" and "the record shows that CLECO and Plaintiff were in agreement that the documents were not proprietary to CLECO." We have found nothing in the record to support Lacour's self-serving statement that CLECO asserted the position that the document in question was not its proprietary information. That statement by Lacour is totally inconsistent with the uncontroverted testimony found in the record.

If any public record applied for by any authorized person is not in the custody or control of the person to whom the application is made, such parson shall promptly certify this in writing to the applicant, and shall in the certificate state in detail to the best of his knowledge and belief, the reason for the absence of the record from his custody or control, its location, what person then has custody of the record and the manner and method in which, and the exact time at which it was taken from his custody or control.

In its initial production of documents on July 26, 2017, the City certified, with the exception of document that were exempt from production, it had "no further records responsive to [Lacour's] request." As the City notes, Lacour acknowledged in his brief that the City informed him in an email sent on November 30, 2017, that with the production of the disputed spreadsheet, "you have been provided all documents responsive to your public records request." Finally, at trial, it was confirmed under oath during the hearing that there were no other documents responsive to Lacour's public records request.

The record reflects Lacour was informed throughout the process of what documents were unable to be produced and for what reason. Although Lacour argues he was never told why certain documents were not being produced and that he did not understand the City's position, he sent an email to Charles Johnson and stated that he had been refused the disputed spreadsheet because it was exempt pursuant to La.R.S. 44:3.2. Lacour's citation to the specific exemption statute belies his argument that he was not informed of the basis for the City's withholding of the disputed document.

Moreover, as the City notes, the purpose of La.R.S. 44:34 is to "prescribe the response when the person does not have custody of the records." *Alliance for Affordable Energy v. Frick*, 96-1763, p. 4 (La.App. 4 Cir. 5/28/97), 695 So.2d 1126, 1132. Custody was not the issue in the present case. The question was whether the document was exempt from production due to confidentiality pursuant to La.R.S. 44:3.2.

7

The trial judge considered all of Lacour's arguments below and determined civil penalties were not warranted. We find no abuse of discretion on the part of the trial court in that finding.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Patrick Lacour.

**AFFIRMED.**